IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| MALCOLM X. SHEPPARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:18-CV-723-HEH |
| | ) | |
| THE VISITORS OF VIRGINIA | ) | |
| STATE UNIVERSITY, LETIZIA | ) | |
| GAMBRELL-BOONE, individually | ) | |
| and in her official capacity, HENRY | ) | |
| DEBOSE, individually and in his | ) | |
| official capacity, and JULIA A. WALKER, | ) | |
| individually and in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>
(Granting Defendants' Motion to Dismiss)

Plaintiff Malcolm X. Sheppard ("Plaintiff"), a former Virginia State University student, is suing The Visitors of Virginia State University and three Virginia State University administrators, Letizia Gambrell-Boone, Henry DeBose, and Julia A. Walker, for alleged gender discrimination and due process violations.[1] According to Plaintiff, VSU violated Title IX (Count I) and the Family Educational Rights Privacy Act of 1974 ("FERPA") (Count II). Further, the Administrators allegedly violated Title IX, FERPA, and Plaintiff's due process rights guaranteed by the Fourteenth Amendment of the United States Constitution, actionable pursuant to 42 U.S.C. § 1983 (Count III).

---

[1] The Court will refer to Virginia State University and Defendant Visitors of Virginia State University as "VSU," Defendants Gambrell-Boone, DeBose, and Walker collectively as the "Administrators," and all defendants collectively as "Defendants."

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 5), pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). The parties have filed memoranda supporting their respective positions and the Court heard argument on March 5, 2019. Plaintiff has conceded that FERPA provides no private right of action and agrees that both claims must be dismissed. (Pl.'s Mem. in Opp'n 12–13, ECF No. 11.) Further, he has agreed that the Eleventh Amendment precludes recovery of monetary damages from the Administrators in their official capacities. (*Id.* at 13.) Consequently, the remaining claims are the alleged Title IX violation against VSU under Count I and the Title IX and due process claims against the Administrators under Count III. Upon due consideration of the parties' arguments, and for the reasons that follow, the Court will dismiss Count I and the remainder of Count III as well.

## I. BACKGROUND

This action arises out of an altercation between students that occurred on the VSU campus on October 25, 2016, and the university's response thereafter. Plaintiff, a male student at VSU at the time, discovered that certain personal items were missing from his dormitory room. (Compl. ¶ 10, ECF No. 1.) He learned from his roommate that a female student and former girlfriend, Student A, along with her female friend, Student B, had been in his room. (*Id.*) Unable to secure assistance from resident assistants within his dormitory, Plaintiff went to Student A's room to retrieve his belongings. (*Id.*) The Complaint alleges that when Student A refused to return his belongings, Plaintiff attempted to grab the room keys from Student A outside her room and inadvertently pushed her in the process. (*Id.* ¶ 11.) Thereafter, Student A filed an Incident Report

with the university's Department of Police and Public Safety ("DPPS"). (*Id.*) Student B also gave a written statement that corroborated Student A's report. (*Id.* ¶ 12.)

DPPS referred all three students to VSU's Office of Judicial Affairs ("OJA"). (*Id.* ¶ 13.) DPPS referred Plaintiff for assault and Students A and B for larceny. (*Id.*) On October 26, OJA issued to Plaintiff a "Pre-Hearing Notice," which informed Plaintiff that charges were pending against him and that he was prohibited from remaining on campus pending resolution of the charges. (*Id.* ¶¶ 14–15.)

On October 31, OJA held a hearing, which Plaintiff attended, in which it found that he had violated certain sections of the Student Code of Conduct. (*Id.* ¶¶ 15–16.) OJA imposed several sanctions, but it did not suspend him or preclude him from completing his coursework. (*Id.* ¶ 17.) Plaintiff sought an appeal of OJA's decision by sending a letter to Defendant Henry DeBose, who was the Director of OJA at the time. However, Plaintiff claims he did not receive an answer and that OJA never considered his appeal. (*Id.* ¶ 19.)

Separately, on October 25, prior to Plaintiff's OJA hearing, Student A obtained a protective order in the Chesterfield County General District Court. (*Id.* ¶ 18.) The protective order prohibited Plaintiff from entering VSU's campus and being within 100 feet of Student A. (*Id.*) Plaintiff was allegedly unaware of the hearing and subsequent order. (*Id.*) Further, on November 9, the Chesterfield County General District Court extended the protective order through January 2017. (*Id.* ¶ 19.)

As a result of the protective order, the Office of Student Conduct permitted Plaintiff to complete his coursework online with the permission of his professors.

3

(Compl. ¶ 21.) On November 11, the Office of Student Conduct requested on Plaintiff's behalf that his professors make provisions to allow him to complete his classes remotely. (*Id.*) Only one professor denied this request. (*Id.*)

On November 29, Defendant DeBose sent Plaintiff a letter notifying him that his suspension from VSU would remain in effect and that he was deemed to be withdrawn from his courses. (*Id.* ¶¶ 22–23.) While Plaintiff was excluded from campus pending his OJA hearings, he alleges that no suspension was in place following the OJA's imposition of sanctions. (*Id.* ¶¶ 15, 22.) DeBose copied Defendants Letizia Gambrell-Boone, the Vice President for Student Success and Engagement, and Julia A. Walker, the EEOC and Title IX Coordinator, on Plaintiff's letter. (*Id.* ¶ 24.) Plaintiff alleges that he assumes that both were involved in the action taken against him. (*Id.*)

In December 2016, Plaintiff attempted to enroll at Old Dominion University, but was unable to do so due to a hold on his VSU transcript. (*Id.* ¶ 25.) Plaintiff allegedly had no outstanding financial obligation to VSU that would justify a hold. (*Id.*) Later that month, Plaintiff's mother contacted Defendant DeBose about releasing Plaintiff's transcript and DeBose allegedly told her that he would speak with the university registrar. (*Id.*) The transcript was ultimately released in March 2017, after an attorney acting on Plaintiff's behalf made such a demand. (*Id.* ¶ 26.) By that time, Plaintiff had missed the deadline for enrollment at Old Dominion University for the Spring 2017 semester. (*Id.*)

Although OJA completed the disciplinary proceedings against Plaintiff in October 2016, disciplinary action was not taken against Student A or Student B until March of 2017. (*Id.* ¶¶ 30–33.) The OJA found that Student A was responsible for theft and issued

4

sanctions, and further found that Student B was not responsible for any misconduct. (*Id.* ¶¶ 32–33.)

Plaintiff alleges that VSU took disciplinary action against Students A and B only after it received notice of Plaintiff's complaint filed in January 2017 with the United States Department of Education, Office of Civil Rights ("OCR") (*Id.* ¶¶ 28, 31–33.) According to Plaintiff, OCR concluded that Plaintiff had established a prima facie case of discrimination. (*Id.* ¶ 34.) OCR found that the discrepancy in the time between the initiation and adjudication of the charges against Plaintiff and the initiation and adjudication of the charges against Student A and Student B was demonstrative of VSU's less favorable treatment of Plaintiff on account of his sex. (*Id.* ¶¶ 34–36.)

On October 24, 2018, Plaintiff filed this action against VSU alleging discrimination on the basis of sex in violation of Title IX (Count I), codified at 20 U.S.C. § 1681(a), and violations of FERPA (Count II), codified at 29 U.S.C. § 1232g. (*Id.* ¶¶ 38–43.) Plaintiff also included claims against the Administrators in their individual and official capacities for violations of Title IX, FERPA, and Plaintiff's due process rights under the Fourteenth Amendment, actionable pursuant to 42 U.S.C. § 1983 (Count III). (*Id.* ¶¶ 44–59.) Plaintiff seeks $500,000.00, plus costs and attorney's fees, and an order enjoining Defendants to remedy the adverse notations on Plaintiff's transcript and to cease all future discrimination against him. (*Id.* at 13.)

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

5

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

A motion made pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. If a defendant contends that the

complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts in the complaint are presumed true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780–81 (E.D. Va. 2002). Alternatively, if the defendant argues that the jurisdictional facts in the complaint are untrue, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219. Consideration of evidence outside of the pleadings does not necessarily convert the motion to one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted). In either case, the plaintiff bears the burden of proof to preserve jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### III. ANALYSIS

For the reasons that follow, the Court will grant Defendants' Motion to Dismiss. The Court will dismiss Count I because Plaintiff has failed to state a plausible claim of gender discrimination under Title IX. The Court will dismiss Count II and the FERPA claim under Count III because Plaintiff has ceded these claims in his briefing. (Pl.'s Mem. in Opp'n 12–13). The Court will dismiss the two remaining claims under Count III because (1) Title IX does not create a private cause of action to seek relief from the Administrators, and (2) Plaintiff has failed to state a plausible claim for a violation of due process rights.

First, the Court will dismiss Count I because Plaintiff has failed to state a claim for a Title IX violation by VSU. Title IX provides in pertinent part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). This prohibition is enforceable through an implied private right of action against the institution receiving federal funds. *Davis Next Friend Lashonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999) (finding an implied private right of action to enforce Title IX where the recipient of federal funds is being held liable for its own misconduct).

Neither the Fourth Circuit nor the Supreme Court has addressed the applicability of Title IX in the context of alleged discrimination in a university's student disciplinary proceedings. *See Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 582 (E.D. Va. 2018). Federal courts that have addressed this issue have allowed students to challenge university disciplinary proceedings using various theories of liability, including the erroneous outcome theory and the selective enforcement theory. *See, e.g., Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

Here, Plaintiff is pursuing his claim exclusively under the selective enforcement theory. (Pl.'s Mem. in Opp'n 9.) As three federal courts of appeals have recognized, the selective enforcement theory "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715; *see also Doe v. Miami Univ.*, 882 F.3d 579,

589 (6th Cir. 2018) (citing *Yusuf*, 35 F.3d at 715); *Plummer v. Univ. of Houston*, 860 F.3d 767, 777–78 (5th Cir. 2017) (citing *Yusuf*, 35 F.3d at 715).

To successfully state a claim of selective enforcement, a plaintiff must plausibly allege that the university treated the plaintiff less favorably than a similarly situated student of the opposite gender and that the plaintiff's gender was a motivating factor for the less favorable treatment. *See Yusuf*, 35 F.3d at 715; *Streno v. Shenandoah Univ.*, 278 F. Supp. 3d 924, 929, 932 (W.D. Va. 2017). "However, allegations of a procedurally or otherwise flawed proceeding . . . combined with a *conclusory allegation* of gender discrimination is not sufficient to survive a motion to dismiss." *Yusuf*, 35 F.3d at 715 (emphasis added).

Plaintiff asserts that "VSU selectively enforced its Student Code of Conduct against [P]laintiff on account of his male sex, and brought no charges against Students A and B until after [P]laintiff complained to the . . . Office of Civil Rights." (Pl.'s Mem. in Opp'n 9.) Importantly, Plaintiff "does not challenge the finding of responsibility by the OJA, but states he suffered unequal treatment in relation to the two female students." (*Id.*) In essence, Plaintiff is arguing that VSU subjected him to unequal treatment because it waited to pursue charges against Students A and B until almost five months after his proceedings.

Count I fails for three reasons: Plaintiff has not (1) identified similarly situated female students, (2) alleged facts supporting a plausible inference that he was treated less favorably than the identified female students, and (3) alleged facts beyond conclusory

9

allegations that gender was a motivating factor in the temporal difference between disciplinary proceedings.

First, Plaintiff has failed to identify a similarly situated female student. Plaintiff's proffered comparators were charged with nonviolent property offenses. (Compl. ¶ 13.) Plaintiff's charge, on the other hand, arose from his alleged assault of Student A. (*Id.*) The nature of these charges are materially different. *See Saravanan v. Drexel Univ.*, No. 17-3409, 2017 WL 5659821, at *6 (E.D. Pa. Nov. 24, 2017) ("To consider a student similarly situated, 'the individuals with whom a plaintiff seeks to be compared *must have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it'" (quoting *Ke v. Drexel Univ.*, No. 11-6708, 2015 WL 5316492, at *19 (E.D. Pa. Sept. 4 2015)). Thus, the nature of the charged offenses fatally undermines Plaintiff's contention that Students A and B were similarly situated to him.

Further, Defendant contends that "rather than [employing] a robotic adherence to the 'similarly situated' verbiage," the Court should adopt an analysis that recognizes circumstances that are "sufficiently similar" to satisfy the selective enforcement theory. (Pl.'s Mem. in Opp'n 10.) However, the Court concludes that the nature of the charges in this context are so dissimilar so as to render the circumstances of Plaintiff's prosecution distinct from those of Students A and B.

Second, Plaintiff has failed to allege that he was treated less favorably than the identified female students. Plaintiff has not cited any authority that supports his argument that a mere temporal disparity between disciplinary proceedings amounts to

10

favorable treatment. Further, following the female students' OJA hearings, Student A received sanctions for theft, while Student B was found not responsible for theft. (Compl. ¶¶ 32–33.) This Court declines to find that, as alleged, Students A and B were treated more favorably than Plaintiff on the basis that their disciplinary proceedings began months later.

Finally, Plaintiff has failed to allege other facts that support a plausible inference of discriminatory intent. Beyond the issue of temporal disparity already analyzed by the Court, Plaintiff's allegation of gender discrimination is merely conclusory. (Pl.'s Mem. in Opp'n 10–11.) Without additional facts suggesting that gender bias was a motivating factor, Plaintiff has failed to state a plausible claim of gender discrimination under Title IX. *See Yusuf*, 35 F.3d at 715. Therefore, for the aforementioned reasons, the Court will dismiss Count I.

Plaintiff's remaining claims in Count III seek relief from the Administrators in their official and individual capacities for alleged violations of Title IX and the Due Process Clause of the Fourteenth Amendment, actionable pursuant to § 1983. (Compl. ¶¶ 44–59; Pl.'s Mem. in Opp'n 12–16.) The Court will also dismiss each of these claims.

The Court will dismiss Plaintiff's Title IX claims under Count III because Title IX does not provide a cause of action against individual defendants. Plaintiff relies upon *Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246 (2009) to support his position that Title IX provides such a cause of action. (Pl.'s Mem. in Opp'n 12.) However, Plaintiff's reliance on *Fitzgerald* is misplaced.

In *Fitzgerald*, the Supreme Court found that "Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for § 1983 suits as a means of enforcing constitutional rights." 555 U.S. at 258. Accordingly, the Supreme Court held that a plaintiff may rely upon § 1983 as a vehicle to vindicate constitutional rights when alleging unconstitutional gender discrimination in schools. *Id.* However, the Supreme Court further stated in *Fitzgerald* that Title IX is not the proper avenue of relief when a plaintiff alleges gender discrimination by individuals because "Title IX reaches institutions and programs that receive federal funds... [and]... has *consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals*." *Id.* at 257 (emphasis added). Title IX is not a viable basis for a suit against university officials for gender discrimination because Title IX does not provide for such relief. *See Bracey v. Buchanan*, 55 F. Supp. 2d 416, 419 (E.D. Va. 1999) ("It is impossible to bring a Title IX action against an individual."). Accordingly, the Court will dismiss the Title IX claims under Count III.

Finally, the Court will also dismiss Plaintiff's Fourteenth Amendment due process claims brought via § 1983 under Count III because immunity limits Plaintiff's recovery to injunctive relief and Plaintiff has failed to allege the deprivation of a protected property or liberty interest giving rise to a plausible due process violation. "In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

While the Complaint's allegations are scant with respect to the Administrators' involvement in the alleged violations of Plaintiff's due process rights, the Court will assume, without deciding, that Plaintiff has alleged that the Administrators acted personally to deprive him of constitutional rights.

As an initial matter, Defendants assert qualified immunity as to Plaintiff's claims against them in their personal capacities. (Def.'s Mem. Supp. 25–26, ECF No. 11.) "[A] well-established principle of federal civil rights litigation is that government officials sued in their personal capacities for violations of federal rights are entitled to qualified immunity if the right was not clearly established at the time of the violation." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 724 (E.D. Va. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001)). In resolving claims of qualified immunity by government officials, the Court must determine (1) whether the facts, as alleged by Plaintiff, make out the violation of a constitutional right and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. It is within the discretion of federal district courts to determine which step to analyze first. *Id.* at 242. Based on the Court's analysis of Plaintiff's § 1983 claims, *see infra*, Plaintiff has not provided any support for a clearly established constitutional violation by the Administrators. Accordingly, they enjoy qualified immunity and Plaintiff is barred from pursuing his claims against them in their personal capacities.

Further, Defendants have asserted Eleventh Amendment immunity for monetary relief sought from the Administrators in their official capacities. (Def.'s Mem. Supp. 15–

16.) Plaintiff has acknowledged that the Administrators enjoy such immunity. (Pl.'s Mem. in Opp'n 13.) Thus, Plaintiff's relief against the Administrators in their official capacities is restricted to "'prospective, injunctive relief . . . to prevent ongoing violations of federal law . . . .'" *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013) (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010)).

With immunity's limitations in mind, the Court turns to the sufficiency of the pleadings with respect to Plaintiff's § 1983 claims. In order to state a procedural due process claim, a "plaintiff must allege (i) that he possessed a protected liberty or property interest, (ii) that the state or its agents deprived him of this interest, and (iii) that this deprivation was effectuated without constitutionally sufficient process." *Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d at 720 (E.D. Va. 2015) (citing *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013)). In his brief opposing Defendants' Motion to Dismiss, Plaintiff asserted only a violation of a liberty interest "in his good name, reputation, honor and integrity" as a result of the government's actions. (Pl.'s Mem. in Opp'n 15; *see also* Compl. ¶ 49.) However, in the Complaint, Plaintiff asserted an additional liberty interest "in pursuing his education, as well as future educational and employment opportunities and occupational liberty" and a property interest "in continuing his education at VSU." (Compl. ¶¶ 50–51.) Considering each of these asserted interests, Plaintiff has failed to allege that he possessed a protected liberty or property interest.

First, Plaintiff has failed to allege that he possessed a protected liberty interest. According to Plaintiff, "[a]n unwarranted suspension from a state-sponsored institution of

14

higher learning implicates a liberty interest because the plaintiff's 'good name, reputation, honor or integrity is at stake because of what the government is doing to him.'" (Pl.'s Mem. in Opp'n 15–16 (quoting *Constantineau*, 400 U.S. 433, 437 (1971)).) Plaintiff further contends that "the suspension and withholding of his transcript constitutes an alteration of plaintiff's legal status as a student. (*Id.* (citing *Sciolino v. City of Newport News*, 480 F.3d 642, 650 (4th Cir. 2007)).)

Plaintiff is correct that the Supreme Court has found a protected liberty interest "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *See Constantineau*, 400 U.S. at 437. However, "injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest." *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 628 (4th Cir. 2002). "Instead, to state a procedural due process liberty interest claim, a plaintiff claiming due process protection must assert that a state actor has injured his reputation or otherwise imposed a reputational 'stigma' on him and must also have been deprived of 'some more tangible interests.'" *Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d at 722 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Under what has become known as the "stigma-plus" test, Plaintiff has failed to allege a reputational injury or that his purported "reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status . . . ." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012); *see also Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d at 722.

Plaintiff claims that the Administrators violated a protected liberty interest as a result of an "unwarranted suspension" and "withholding of his transcript." (Pl.'s Mem. in Opp'n 15–16.) However, Plaintiff provides no legal support for the proposition that he suffered reputational harm or alteration of a legal status in either instance.[2]

According to the Complaint, Plaintiff's suspension that resulted in the forced withdrawal from his courses occurred following the extension of the protective order preventing his access to campus by the Chesterfield General District Court. (Compl. ¶¶ 20, 22–23.) Plaintiff has not alleged that his suspension was in any way publicized or noted on his student records. *See Bd. of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 83 (1978) (noting the Supreme Court's prior rejection in the employment context of "the theory that the mere fact of dismissal, absent some publicizing of the reasons for the action, could amount to a stigma infringing one's liberty" in a due process claim brought via § 1983 (citing *Bishop v. Wood*, 426 U.S. 341, 348 (1976))). Further, the only concrete injunctive relief sought by Plaintiff in his Complaint is to "remedy the adverse notations" on his transcript. (Compl. at 13.) However, the contention that a withdrawal notation on his transcript affects his reputation carries no weight. There are numerous reasons a student may withdraw from university courses that do not involve a negative connotation. Accordingly, Plaintiff has failed to plausibly allege that the Administrators

---

[2] The only authority Plaintiff cites with respect to a change in his legal status following the series of events giving rise to this case is *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 650 (4th Cir. 2007). (Pl.'s Mem. in Opp'n 15–16.) The portion of the case cited involves the standard a plaintiff must satisfy to meet the "public disclosure" requirement when claiming a violation of a liberty interest in the employment context, where an employer places allegedly false information in a personnel file and made that file public in conjunction with a termination or demotion. *See Sciolino*, 480 F.3d at 646, 650. The Court finds this authority inapplicable to the issue at hand.

violated a liberty interest as a result of his suspension. Likewise, for the same reasons, Plaintiff's asserted liberty interest "in pursuing his education, as well as future educational employment opportunities and occupational liberty," (Compl. ¶ 50), fails as well.

While Plaintiff's attempt to transfer universities was allegedly delayed by a hold placed on his transcript until March 2017 (*see* Compl. ¶¶ 25–26), that hold was released, and Plaintiff has provided no basis up on which this would represent a protected liberty interest. Further, there is no injunctive relief this Court could provide to remedy this issue.

Plaintiff has failed to allege that these actions resulted in any reputational harm and has not provided support beyond conclusory allegations that they altered his legal status. Therefore, he has failed to allege a constitutionally-protected liberty interest.

Plaintiff further alleges a deprivation of a property interest "in continuing his education at VSU." (Compl. ¶ 51.) However, again, Plaintiff has failed to provide any support for this assertion. This argument fails because Plaintiff has not identified an independent source of law creating an entitlement to continue his higher education. The Constitution does not create protected property interests; rather, a protected property interest is "created and . . . defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez,* 419 U.S. 565, 572–74 (1974) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)). "Neither the Supreme Court nor the Fourth Circuit has held that such a property interest exists in

connection with higher education, either categorically or specifically with regard to Virginia law." *See Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d at 720–21.

According to Plaintiff, when VSU withdrew him from his classes and did not allow him to continue taking his classes online, it deprived him of completing remote work arrangements made previously with some of his professors. (Compl. ¶ 54.) However, Plaintiff asserts only a "unilateral expectation" to complete his classes online, rather than an independent source of law entitling him to that arrangement. *See Roth*, 408 U.S. at 577. Plaintiff has neither alleged nor argued that any other Virginia statute establishes such an entitlement. Thus, he has failed to assert a protected property interest in continuing his education at VSU. Because Plaintiff has failed to allege he had a protected property or liberty interest, the Court will dismiss his procedural due process claims against the Administrators.

## IV. CONCLUSION

For the reasons stated above, the allegations in the Complaint fail to state a plausible claim. The Court will dismiss Count I and the due process claim in Count III without prejudice. The Court will dismiss Count II along with the FERPA and Title IX claims under Count III with prejudice. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: **April 25 2019**
Richmond, Virginia

18