IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MALCOLM X. SHEPPARD,

    Plaintiff,

v.                                                                        Civil Action No.: 3:18-cv-00723-HEH

THE VISITORS OF VIRGINIA STATE UNIVERSITY, et al.

    Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

    Plaintiff Malcolm X. Sheppard, by counsel, submits this memorandum in opposition to the Motion to Dismiss Amended Complaint, filed by the defendants The Visitors of Virginia State University and Henry DeBose.

**I.    INTRODUCTION**

    The plaintiff brings this action against VSU for unequal enforcement of the Student Code of Conduct on the basis of sex, in violation of IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a). Following an altercation with a former girlfriend ("Student A") that resulted in administrative charges against the each of them, as well as a female friend of Student A ("Student B"), VSU took prompt action against plaintiff, but none against Students A or B until after plaintiff reported the gender-based disparity to the U.S. Department of Education, Office of Civil Rights ("OCR"). The OCR concluded that the discrepancy was "demonstrative" that VSU treated plaintiff differently from the female students.

    Sheppard also alleges that VSU official DeBose violated Sheppard's rights to due process guaranteed by the 14th Amendment to the U. S. Constitution to be arbitrarily and haphazardly suspended, without notice of charges against him or affording him an opportunity to be heard.

Sheppard enjoys a property interest entitling him to such constitutional protections, established by Sheppard's payment of tuition fees, and also by policies and procedures enacted by VSU that substantially limits its ability to suspend students except for cause and only after notice and an opportunity for hearing. As a result of the suspension, Sheppard was involuntarily withdrawn from his courses mid-academic semester, forfeiting his academic credit and the tuition he paid for them.

Finally, Sheppard alleges that DeBose violated Sheppard's rights to equal protection of law guaranteed by the 14th Amendment to the U.S. Constitution to be free from discrimination while participating in an education program on account of his male gender.

## II.   FACTUAL BACKGROUND

The facts asserted by Mr. Sheppard in his Complaint can be summarized as follows:

Sheppard enrolled in VSU for the 2016-2017 academic year. Upon doing so, he became subject to the "rights, responsibilities and privileges pertaining to [student's] experience at VSU," and set forth in the VSU Student Handbook. (Amended Complaint ¶ 7) The Student Handbook "contains the rules and regulations governing conduct." It sets forth the procedures to be followed when complaints are filed against students. (Am. Comp. ¶¶ 8-11) It further identifies "Rights of the Accused," which describes the elements of due process to be followed before a student is sanctioned, including suspended or expelled. (Am. Comp. ¶ 12)

On October 25, 2016, Sheppard was involved in a physical confrontation with a female student with whom Sheppard was ending a two-year romantic relationship. (Am. Comp. ¶ 13) The female student (Student A) and a friend (Student B) stole from Sheppard's dorm room a cell phone charger and items of clothing. Sheppard went to retrieve the items and in the process

pushed Student A. (Am. Comp. ¶¶ 14-16) VSU's police unit was called and referred Sheppard to VSU's Office of Judicial Affairs on charges of assault. The police unit also referred Students A and B to the OJA on charges of larceny. (Am. Comp. ¶ 17)

The next day, October 26, 2016, Henry DeBose, Director of VSU's Office of Judicial Affairs, issued Sheppard a Pre-Hearing Notice. (Am. Comp. ¶ 18) A hearing was held on October 31, 2016 to adjudicate charges of assault against Sheppard. (Am. Comp. ¶ 19) Sheppard was found responsible for physical assault, threats, intimidation or harassment, and violence on university property. (Am. Comp. ¶ 20) On November 1, 2016, a sanction was imposed on Sheppard of community service, anger management classes, relationship violence education and probation for one semester. (Am. Comp. ¶ 21) Critically for this action, Sheppard was not suspended from VSU. (Id.) He did, however, go home and never returned to campus. (Am. Comp. ¶ 19)

Following the October 25th incident, Student A obtained a protective order against Sheppard. It prohibited him from entering the VSU campus, or within 100 feet of her. (Am. Comp. ¶ 22) Sheppard receive no notice of the request for the protective order, and thus did not appear in court to object to it. (Id.) The protective order was thereafter extended through January 2017. (Am. Comp. ¶ 24)

On November 11, 2016, the Office of Student Conduct sent email messages to Sheppard's teachers requesting that they make arrangements for him to complete his coursework online. Three of Sheppard's four teachers made such arrangements. (Am. Comp. ¶ 25)

On November 29, 2016, DeBose informed Sheppard that his "suspension" remained in effect. (Am. Comp. ¶ 26) This was a new sanction since he was not suspended as part of his sanction for the assault. (Id.) DeBose further informed Sheppard that he would be "withdrawn"

from school, and was denied permission to complete his coursework online. (Am. Comp. ¶ 27) Sheppard alleges that this suspension violated the procedures for suspension described in the Student Code of Conduct, which requires an opportunity for a hearing. (Am. Comp. ¶ 28) The suspension served to deny Sheppard academic credit for his courses. (Am. Comp. ¶ 29) This suspension caused Sheppard to forfeit the tuition he paid. (Id.)

As VSU did not adjudicate administrative charges against Students A or B for larceny, arising out of the same incident, on January 23, 2017, Sheppard initiated a complaint for sex discrimination in an education program with the U.S. Department of Education, Office of Civil Rights. (Am. Comp. ¶ 30) VSU violated the Student Code of Conduct by failing to adjudicate charges against Students A & B, including delivering notice of charges within three business days, and scheduling a pre-hearing conference shortly thereafter. (Am. Comp. ¶¶ 32-34) VSU received notice of Sheppard's Dept. of Education complaint on March 16, 2017. (Am. Comp. ¶ 35) Four days later, on March 20, 2017, VSU initiated administrative charges against Student A. (Am. Comp. ¶ 37) A hearing was conducted on April 7, 2017, with Student A being found responsible for larceny and sanction, and Student B acquitted. (Id.)

The Dept. of Education determined after a preliminary investigation that Sheppard established a prima facie case of discrimination since VSU took swift action against him and delayed taking action against the female students until it received notice of Sheppard's complaint. (Am. Comp. ¶ 39-41) VSU thereafter entered into a Resolution Agreement with the Dept. of Education. (Am. Comp. ¶ 41)

## III. <u>Legal Standard</u>

### A. Fed. R. Civ. P. 12(b)(1)

In a challenge to a court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden diction of establishing proper federal jurisdiction is proper. See <u>Lucas v. Henrico County Sch. Bd.</u>, 822 F.Supp.2d 589, 599 (E.D. Va., 2011) (citing <u>Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.</u>, 914 F.Supp.2d 1335, 1338 (E.D.Va.1996) (in turn citing <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936); <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir.1982)).

"If the facts necessary to determine jurisdiction are intertwined with the facts central to the merits of the dispute, the proper course of action is for the court to find that jurisdiction exists and then to resolve the factual dispute on the merits unless the claim is made solely for the purpose of obtaining jurisdiction, or is determined to be wholly insubstantial and frivolous." <u>Lucas</u>, 822 F.Supp.2d at 599 (citing <u>Adams</u>, 697 F.2d at 1219; <u>United States v. North Carolina</u>, 180 F.3d 574, 580 (4th Cir.1999); <u>Bell v. Hood</u>, 327 U.S. 678, 682–83 (1946).

### B. Fed. R. Civ. P. 12(b)(6)

Whether a complaint sufficiently states a claim upon which relief can be granted is governed by the Supreme Court's plausibility framework outlined in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) ("[W[e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

The Fourth Circuit has clarified that plausibility standard under both Iqbal and Twombly is not high: "To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiff's '[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.'" Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (quoting Twombly, 550 U.S. at 555 (2007).

Nor is a plaintiff subject to a court's belief in the allegations: "Although the Supreme Court has made clear that the factual allegations in a complaint must make entitlement to relief plausible and not merely possible, what Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." McLean v. United States, 566 F.3d 391, 399 (4th Cir. 2009) (internal quotation marks and citations omitted). If a claim lacks merit, it "may be dealt with through summary judgment under Rule 56." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

IV.   ARGUMENT

   A. COUNT ONE – TITLE IX VIOLATION AGAINST VSU

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), states:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

"Title IX unquestionably prohibits federally supported educational institutions from practicing 'discrimination' on the basis of sex." Brzonkala v. Va. Polytechnic Inst. and State Univ., 132 F.3d 949, 957 (4th Cir. 1997), rev'd en banc on other grounds, 169 F.3d 820 (4th Cir. 1999). As virtually every other circuit court of appeals, the Fourth Circuit has endorsed and followed the Second Circuit's formulation for challenging a university's disciplinary proceeding

under Title IX, expressed in Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994), specifically, (1) "erroneous outcome," and (2) "selective enforcement." Brzonkala, 132 F.3d at 961-62.

Plaintiff is proceeding exclusively under the "selective enforcement" standard, which "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." Yusuf, 35 F.3d at 715. Plaintiff is proceeding under this theory because he does not challenge the finding of responsibility by the OJA, but states that he suffered unequal treatment in relation to the two female students, evidenced by patterns of decision-making that show the influence of gender. Id. In essence, VSU selectively enforced its Student Code of Conduct against plaintiff on account of his male sex, and brought no charges against Students A and B until after plaintiff complained to the U.S. Dep't of Education Office of Civil Rights. Indeed, the OJA seemed content to tolerate the female students ignoring its messages asking them to contact OJA about the incident.

Defendants argue that plaintiff failed to state a claim for selective enforcement because of his sex because he was purportedly not "similarly situated" with Students A or B. Defendants do not cite to any Fourth Circuit or Eastern District of Virginia authority for the "similarly situated" requirement.

Despite the different charges against Sheppard and Student A, each were "similarly situated in all material respects," inasmuch as both were students at VSU, they engaged in misconduct arising from the same incident, both were subject to the same Student Code of Conduct, both had charges leveled against them by the VSU Department of Police and Public Safety, both were subject to the same adjudicatory process established by the VSU Student Code of Conduct, and both students shared the same prior disciplinary history. Lewis v. City of Union City, Ga., 918 F.3d 1213 (11th Cir. 2019) (en banc) (articulating "similarly situated in all material

respects" standard for analyzing employment discrimination claims under Title VII of Civil Rights Act). Courts have relied on Title VII principles in analyzing Title IX claims alleging discrimination in a university's student disciplinary proceedings. Yusuf, 35 F.3d at 715; Mallory v. Ohio Univ., 76 Fed. Appx. 634, 638–39 (6th Cir. 2003).

VSU's reliance on the Tennessee District Court in Doe v. Univ. of the S., 687 F.Supp.2d 744, 756 (D. Tenn. 2009), is unavailing because it employs a "circumstances sufficiently similar" standard. An examination of the standard shows that rather than a robotic adherence to the "similarly situated" verbiage, the standard is derived to assist the court in ascertaining whether the university exhibited more favorable treatment on account of sex. "To support a claim of selective enforcement, Plaintiffs must demonstrate that a female was in circumstances sufficiently similar to John Doe's and was treated more favorably by the University." Doe, 687 F.Supp.2d at 756.

Applying this standard, the fact that plaintiff and Students A and B brought charges against each other arising from the same incident, in a process presided over by the same university administrators, makes the individuals "sufficiently similar" for purposes of determining bias, regardless of the charges being different in nature. The standard does not require that the male and female comparators be in precisely the exact situation (same charge, same incident, same decision-maker) but that they be in "sufficiently similar" circumstances to allow a fact-finder to reach a plausible finding that one individual was treated more favorably on account of sex.

Neither the Fourth Circuit in Brzonkala, nor the Second Circuit in Yusuf, demanded a rigid comparison of opposite sexed individuals facing the same exact charges to state a claim for gender bias. Instead, what is required is a "particularized allegation relating to a causal

8

connection between the flawed outcome and gender bias." Brzonkala, 132 F.3d at 960, quoting Yusuf, 35 F.3d at 715. "Such allegations might include, inter alia . . . patterns of decision-making that also tend to show the influence of gender." Id. Plaintiff has alleged a pattern whereby the OJA issued him a Pre-Hearing Notice the day after the altercation, and conducted his hearing within the week; but allowed Students A and B to ignore OJA's e-mailed request to contact it and failed to issue a Pre-Hearing Notice or conduct a hearing until after plaintiff complained to OCR. This is sufficient under Brzonkala and Yusuf to state a claim for discrimination under Title IX despite plaintiff's charges being different in nature than either Student A's or B's.

Other cases supporting disparate treatment in differing investigative and adjudicative approaches between male and female students facing accusations of misconduct include: Doe v. Univ. of Ore. (Case No. 6:17-cv-001103-AA) (D. Ore. March 26, 2018) at 32 (inference of gender disparity could include "evidence that when the accused is a woman and/or when the accuser is a man, the University conducts sexual misconduct investigations and adjudications differently."); Doe v. Amherst Coll., 238 F. Supp.3d 195 (D. Mass. 2017) (selective enforcement adequately pled when male and female students both charged with sexual assault but university took proactive steps to encourage the female to file a formal complaint, but not the male student; nor did it investigate claim against female student); Rossley v. Drake Univ., 2018 WL 530762 (D. Minn. 2018) ("An accused student and his or her accuser can be compared to show selective enforcement if the parties alleged misconduct against each other.").

Defendants remain free to argue that VSU pursued the charges against plaintiff more rigorously because his charges were more serious, but that does not negate the inference plaintiff raises in his Complaint that the disparity was motivated by his male sex. Iqbal and Twombly's plausibility standard "does not required that the inference of discriminatory intent supported by

the pleaded facts be <u>the</u> most plausible explanation of the defendant's conduct. It is sufficient if the inferences of discriminatory intent is plausible." <u>Doe v. Columbia Univ.</u>, 831 F.3d 46, 57 (2d Cir. 2016).

### C. COUNT III – DEPRIVATION OF DUE PROCESS BY DEBOSE.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty or property, without due process of law." Due process protections are required in publicly-sponsored education disciplinary proceedings. <u>Goss v. Lopez</u>, 419 U.S. 565, 579 (1975) ("At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing.").

DeBose arbitrarily and haphazardly suspended Sheppard without justification, without leveling charges against him, or notifying him of such charges, and without affording him an opportunity to be heard. This action violated VSU's own Student Code of Conduct that sets forth the procedure to be followed prior to suspending a student, and further sets forth the rights of a student accused of misconduct. DeBose ignored the procedures when he unilaterally and summarily suspended Sheppard from VSU and denied him the opportunity to complete his coursework online, which three of Sheppard's four teachers had approved, and which Sheppard could have completed off campus in compliance with the protective order issued by the Chesterfield County General District Court.

Sheppard enjoyed a property interest in not being arbitrarily or haphazardly suspended, without notice or opportunity to be heard. Sheppard's entitlement to continued enrollment arose from the fact that he paid his tuition and fees to VSU for the fall 2016 semester, and therefore had an interest in being permitted to complete his coursework so far as he met academic

10

standards and did not engage in misconduct. See Doe v. Marymount Univ., 297 F.Supp.3d 573, 588 (E.D. Va. 2018) ("[T]o the extent any contract can be implied between a student and his or her university, the student is only protected from irrational, haphazard treatment by the university.").

Sheppard further enjoyed a property interest against summary suspension in VSU's policies and procedures that established a system of suspending students "only after a finding of cause," which *may* give rise to "an entitlement to continued enrollment," and "therefore a protected property interest." Doe v. Alger, 175 F.Supp.3d 646, 658 (W.D. Va. 2016).

DeBose was directly responsible for suspending Sheppard despite knowing that he was not issued a suspension by the VSU Office of Judicial Affairs. DeBose denied Sheppard the opportunity of completing his coursework online, away from campus, and erroneously withdrew Sheppard from classes mid-semester.

Sheppard was wrongfully suspended by DeBose, which was not a sanction imposed by OJA. DeBose suspended Sheppard without bringing charges against Sheppard, without notifying Sheppard of the charges against him, without invoking the procedure and adjudicative processes set forth in the Student Code of Conduct, and without affording Sheppard a right to a hearing or at least conferring with Sheppard so he could be heard. Accordingly, DeBose's suspension violated Sheppard's due process rights to basic fairness, including but not limited to, notice and the opportunity to be heard.

As an employee, agent and representative of VSU, DeBose was acting under color of state law when he displayed intentional and reckless disregard for Sheppard's constitutional rights.

In <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), the Supreme Court held that a municipality may be liable under Section 1983 where its policymakers made "a deliberate choice to follow a course of action . . . from various alternatives, and the policy chosen reflects deliberate indifference to the constitutional rights of [the city's] inhabitants." <u>Id</u>. at 391. The Due Process Clause of the Fourteenth Amendment protects people from the arbitrary deprivation of life, liberty, and property, without due process of law" by state governments. <u>Deshaney v. Winnebago Cnty Dep't of Soc. Servs</u>., 489 U.S. 189, 196 (1989).

Given that DeBose composed the letter suspending Sheppard, the evidence affirmatively shows that he "'acted **personally** in the **deprivation** of plaintiff's rights.'" <u>Oliver v. Powell</u>, 250 F.Supp.2d 593, 598 (E.D. Va. 2002) (emphasis in original) quoting <u>Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985).

Defendants' suspension of plaintiff cannot be attributed to the Chesterfield court's protective order. The protective order only restricted plaintiff from appearing on campus and within 100 feet from Student A. Plaintiff abided by these restrictions, and did not return to the VSU campus following the October 25, 2016 incident save to attend his OJA hearing. The Chesterfield court had no power or authority to suspend plaintiff from VSU. Nor did the protective order prohibit plaintiff from completing his coursework online, as he had previously arranged with the consent of all but one of his professors.

Thus, DeBose cannot pin the suspension and withdrawals from his classes on the court protective order. It is solely his fault.

Imposing a sanction of suspension without notice or hearing is not a gray area of the law. DeBose should have been aware from his experience in the higher education disciplinary field that they had no authority to suspend a student, prevent him from completing coursework online,

or withdraw him involuntarily from class outside of the OJA process and without due process of law.

DeBose was aware that the OJA did not impose a suspension. He was aware that Sheppard had made arrangements with his professors to complete the coursework online – in fact, DeBose had reached out to the professors specifically for this purpose. He should have had the common sense to understand that the Chesterfield court protective order was not a bar to Sheppard's completing his coursework online. There is no reason for supposing that DeBose was somehow unaware that he could not suspend Sheppard without conducting a hearing of charges against him. Accordingly, DeBose cannot avail himself of the doctrine of qualified immunity.

### D.  COUNT III – DEPRIVATION OF EQUAL PROTECTION BY DEBOSE.

DeBose, was directly responsible for discriminating against Sheppard and denying him the right to participate in an educational program on account of his male gender, in violation of Sheppard's constitutional right to equal protection of the laws, guaranteed under the Fourteenth Amendment to the U.S. Constitution, which is actionable under 42 U.S.C. § 1983. Fitzgerald v. Barnstable School Comm., 555 U.S. 246, 258 (209) ("§ 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools.").

As Director of VSU's Office of Judicial Affairs, DeBose was directly responsible for initiating judicial action against Sheppard but not against Student A for the conduct arising from the same October 25, 2016 incident. DeBose violated the procedures contained in VSU's Student Code of Conduct when he failed to notify Student A of the administrative charge of larceny within three business days of the incident, and schedule a hearing soon thereafter. This disparate

treatment from the action taken against Sheppard constitutes a deprivation of equal protection of the laws.

As an employee, agent and representative of VSU, DeBose was acting under color of state law when he displayed intentional and reckless disregard for Sheppard's constitutional rights

As a result of these equal protection violations, Sheppard was wrongfully suspended and suffers ongoing harm, including interruption of his college career, forfeiture of tuition paid and academic credit for courses partially completed and which could have been completed, and other monetary and non-monetary damages.

## V. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss the Amended Complaint should be denied.

Respectfully submitted,

MALCOLM X. SHEPPARD

By: _____/s/_____
Scott Gregory Crowley
Virginia Bar No. 31216
Attorney for Malcolm X. Sheppard
Crowley & Crowley
4870 Sadler Road, Suite 300
Glen Allen, VA  23060
Phone:  (804) 205-5010
Fax: (804) 205-5001
E-mail: scrowley@crowleyandcrowley.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald N. Regnery, Esq.
Senior Assistant Attorney General
Sandra S. Gregor, Esq.
Assistant Attorney General
Office of the Virginia Attorney General
202 North Ninth Street
Richmond, VA  23219


          _____/s/_____
          Scott Gregory Crowley
          Virginia Bar No. 31216
          Attorney for Malcolm X. Sheppard
          Crowley & Crowley
          4870 Sadler Road, Suite 300
          Glen Allen, VA  23060
          Phone:  (804) 205-5010
          Fax: (804) 205-5001
          E-mail: scrowley@crowleyandcrowley.com